IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**UNITED STATES OF AMERICA**                                                    **PLAINTIFF**

**V.**                     **CASE NO. 5:25-CR-50021-003**

**RAY CARLOCK**                                                                    **DEFENDANT**

## OPINION AND ORDER

Mr. Carlock brings a Fourth Amendment challenge to the use of physical evidence obtained during a warrantless search of luggage in his possession.[1] The Court held a hearing on December 1, 2025, at which Detective John Mackey, the officer who directed the allegedly unlawful search, testified. For the reasons explained below, Mr. Carlock's Motion to Suppress (Doc. 88) is **DENIED**.

In December 2024, detectives with the Fourth Judicial Drug Task Force developed a confidential informant who indicated they could purchase cocaine from "Boogie," later identified as Mr. Carlock. On December 16 and 18, 2024, the confidential informant, under direction from law enforcement, successfully conducted controlled buys of cocaine and ecstasy pills from Mr. Carlock. Both controlled buys occurred at Mr. Carlock and his girlfriend/co-defendant Toni Yeager's residence on North Betty Jo Drive in Fayetteville, Arkansas. During the December 18, 2024, controlled buy, the confidential informant saw a handgun on the table and reported to law enforcement that Mr. Carlock and his friends regularly carry firearms.

---

[1] *See* Defendant Ray Carlock's Motion to Suppress and Brief in Support (Docs. 88–89) and the Government's Response in Opposition (Doc. 90).

1

After the controlled buys from Mr. Carlock, law enforcement was notified by a different confidential informant with whom police had an established relationship that they could purchase methamphetamine from Ms. Yeager at the same Betty Jo residence. After relaying this information, the second confidential informant completed a number of controlled buys of methamphetamine from Ms. Yeager at the Betty Jo residence. This confidential informant also reported they knew Mr. Carlock by his street name "Boogie Bang," that "Bang" was part of his name because Mr. Carlock frequently carried a firearm, and that they had personally seen Mr. Carlock with a firearm tucked into his waistband within the first few days of January 2025.

The second confidential informant also reported to law enforcement that eviction proceedings had been initiated against Mr. Carlock and Ms. Yeager, that the couple was now staying at a hotel in Fayetteville and planning to leave town, and that the informant had been in their hotel room and seen at least two ounces of methamphetamine and "a lot of ecstasy."

The morning of January 8, 2025, the police conducted surveillance at the hotel where the informant had reported the couple was staying and saw Mr. Carlock and Ms. Yeager leaving the hotel with luggage. Ms. Yeager went to the front desk while Mr. Carlock loaded the luggage into a silver vehicle that had just arrived, got in the car, and left. A couple of officers followed the silver vehicle to its destination, the Betty Jo residence.

While Mr. Carlock was leaving with the luggage, Ms. Yeager was arrested by police in the lobby where she was checking out.[2] After being Mirandized, Ms. Yeager told Detective Mackey that Mr. Carlock owned a gun, but she did not know if it was with him

---

[2] Ms. Yeager was on state parole and had a corresponding search waiver on file.

2

in the luggage or at his cousin's house. Police found fifty grams of methamphetamine in her purse and a meth pipe in her pocket.

Meanwhile, at the Betty Jo residence, officers approached the silver car, arrested Mr. Carlock and placed him in the back of a patrol car,[3] and spoke to the driver who told them that he was a rideshare driver and that all the luggage in the vehicle was Mr. Carlock's, not his. Officers unloaded the luggage from the vehicle and allowed the driver to leave. Four bags were seized: a black and white camo backpack, a grey and black backpack, a blue suitcase, and a blue duffle bag.

The officers at the Betty Jo residence waited for Detective Mackey to arrive to tell them what to do about the luggage. Detective Mackey arrived between thirty and forty-five minutes later and directed the officers to search the luggage, and then he Mirandized and interviewed Mr. Carlock. Mr. Carlock told Detective Mackey that the blue suitcase was his, but the other bags were Ms. Yeager's.

The black and white camo backpack contained women's clothes and toiletry items, a wallet with cards belonging to Ms. Yeager, but no contraband.

The grey and black backpack contained a baggie with 37 grams of methamphetamine and 102 MDMA tablets, a digital scale that field tested positive for cocaine and methamphetamine residue, and men's clothes, toiletry items, and a cellphone.

---

[3] Mr. Carlock does not attack the propriety of his warrantless arrest, which police assert was justified by the probable cause established by the two controlled buys conducted by the first confidential informant.

The blue suitcase that Mr. Carlock had identified as his contained a digital scale, mail addressed to Mr. Carlock, and a Department of Corrections ID for Mr. Carlock's brother.

The blue duffle bag contained men's shoes, clothing, and a belt, as well as 20 loose rounds of .40-caliber ammunition, a loaded Taurus PT .45-caliber handgun, and a loaded Canik TP40v2 .40-caliber handgun that had been reported stolen.

Mr. Carlock was subsequently indicted for conspiracy to distribute and possession with intent to distribute methamphetamine, distribution of cocaine, and possession of a firearm in furtherance of a drug trafficking offense (Doc. 1). Mr. Carlock contends the warrantless search on January 8th was unlawful and he seeks to suppress and exclude all evidence seized from the luggage.

The Government asserts that Mr. Carlock lacks standing to challenge the searches of the bags for which he disclaimed ownership. "Standing" in the Fourth Amendment context is something of a misnomer. The Fourth Amendment standing doctrine reflects the principle that Fourth Amendment rights are "personal rights which, like some other constitutional rights, may not be vicariously asserted." *Alderman v. United States*, 394 U.S. 165, 174 (1969). Therefore, a person has no Fourth Amendment protection, and thus cannot invoke the exclusionary rule, against evidence obtained by an illegal search and seizure of "a third person's premises or property." *Rakas v. Illinois*, 439 U.S. 128, 134 (1978). "Unlike Article III standing, Fourth Amendment standing is 'not a jurisdictional question and hence need not be addressed before addressing other aspects of the merits of a Fourth Amendment claim.'" *United States v. Juneau*, 73 F.4th 607, 613 (8th Cir. 2023)

(quoting *Byrd v. United States*, 584 U.S. 395, 411 (2018)). Because Mr. Carlock's Motion fails on the merits, the Court does not address this argument.

Mr. Carlock asserts that the warrantless searches of the luggage were not justified by any exception to the usual rule that "warrantless searches are *per se* unreasonable." *United States v. Farrington*, 42 F.4th 895, 898 (8th Cir. 2022). The Government contends that the automobile and search-incident-to-arrest exceptions apply and that, in any event, the evidence should not be suppressed because it would have inevitably been discovered as part of an inventory search. Because the Court finds the search was permissible under the automobile exception, it need not reach the Government's other arguments.

"Probable cause to believe that an automobile contains contraband or evidence of criminal activity has long been held to justify a warrantless search of the automobile and seizure of the contraband." *United States v. Shackleford*, 830 F.3d 751, 753 (8th Cir. 2016). "[T]he automobile exception's scope extends to the 'automobile and the containers within it where [officers] have probable cause to believe contraband or evidence is contained.'" *United States v. Keck*, 2 F.4th 1085, 1089 (8th Cir. 2021) (second alteration in original) (quoting *California v. Acevedo*, 500 U.S. 565, 580 (1991)). Mr. Carlock argues that the police did not have probable cause to believe he was carrying contraband on January 8 and that the automobile exception should not apply because the luggage had been taken out of the automobile before it was searched.

"Probable cause exists, when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place." *United States v. Wells*, 347 F.3d 280, 287 (8th Cir. 2003). The statements of a reliable confidential informant are sufficient to support

5

probable cause. *United States v. Hart*, 544 F.3d 911, 914 (8th Cir. 2008). Supervised, controlled buys are also generally sufficient to establish probable cause. *United States v. Bradley*, 924 F.3d 476, 481 (8th Cir. 2019).

Here, police plainly had probable cause to suspect that the luggage contained contraband. Just three weeks prior to the seizure, Mr. Carlock had sold cocaine and ecstasy pills to a confidential informant in two separate controlled transactions that occurred at the Betty Jo residence. A week before the seizure, Ms. Yeager sold methamphetamine to a confidential informant in multiple controlled transactions that occurred at the same Betty Jo residence. And just days before the seizure, police received a tip from a reliable confidential informant that the pair were staying at a hotel and were observed inside their room with at least two ounces of methamphetamine and a lot of ecstasy pills in their possession. On the day of the seizure, police were watching as Mr. Carlock and Ms. Yeager were seen leaving the north end of the hotel with luggage in hand. Mr. Carlock placed that same luggage in a vehicle and drove away without Ms. Yeager. When police apprehended Ms. Yeager in the hotel lobby, they found her in possession of less than two ounces of methamphetamine and no ecstasy pills. A reasonable person could believe there was a fair probability that additional drugs were with Mr. Carlock in the luggage taken from the couple's hotel room.

Mr. Carlock also argues that the automobile exception should not apply because the luggage had been removed from the automobile and secured by police before it was searched, and that the justification for the automobile exception—"the ready mobility of the vehicle"—does not apply. Apart from *United States v. Chadwick*, 433 U.S. 1 (1977), *abrogated by Acevedo*, 500 U.S. 565, the Court is not aware of any cases involving similar

6

facts, i.e., containers seized from a car and later searched away from the car. But *Chadwick* no longer governs the inquiry, and under today's automobile exception jurisprudence, the searches were constitutional. In *Acevedo*, the Supreme Court overruled its previous cases setting out different rules for searches of automobiles versus searches of closed containers found within automobiles, "conclud[ing] that it is better to adopt one clear-cut rule to govern automobile searches and eliminat[ing] the warrant requirement for closed containers." *Id.* at 579. Where, as here, the police have probable cause to believe a container in a car contains contraband, police may seize and search that container, even if the search happens outside of or away from the car a short time after the container is seized.

  The contrary conclusion would cause absurd results. The officers could have kept the driver and the silver vehicle on the scene and searched the luggage without getting it out of the trunk and backseat, and that would have plainly been constitutional under the automobile exception. Or they could have impounded the silver vehicle with the luggage inside and permissibly searched the luggage later at the impound lot, still without a warrant. *Michigan v. Thomas*, 458 U.S. 259, 261 (1982) ("[W]hen police officers have probable cause to believe there is contraband inside an automobile that has been stopped on the road, the officers may conduct a warrantless search of the vehicle, even after it has been impounded and is in police custody."). Neither of these actions would be preferable to the police's actual conduct here. The searches of Mr. Carlock's luggage after the luggage was seized from an automobile were not rendered unconstitutional because the officers chose not to also seize the driver and his vehicle for the duration.

IT IS THEREFORE ORDERED that Mr. Carlock's Motion to Suppress (Doc. 88) is DENIED.

IT IS SO ORDERED on this 29th day of December, 2025.

_____
TIMOTHY L. BROOKS
CHIEF UNITED STATES DISTRICT JUDGE